UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED NOV 14 2022
CLERK

| ROSLA JONES,<br>Plaintiff<br><br>Versus<br><br>BROCK SERVICES, LLC<br>Defendant | CASE NO:<br><br>JUDGE:<br><br>MAGISTRATE<br><br>JURY TRIAL DEMANDED |
|---|---|

## PETITION FOR DAMAGES

**NOW INTO COURT,** comes **ROSLA JONES** (hereinafter "**MS. JONES**" or "**PLAINTIFF**"), a person of the full age of majority, residing in Mississippi, who respectfully represents:

### I.   PARTIES

1.

Made plaintiff herein is Rosla Jones ("Ms. Jones" or "plaintiff"), a person of full age of majority, and domiciled in the State of Mississippi.

2.

Made Defendant herein is Brock Services, LLC, a limited liability company, with its registered domicile in the State of Texas and its principal place of business in the State of Texas, doing business in this judicial district. Specifically, Plaintiff the events giving rise to this lawsuit occurred in St. Gabriel, Louisiana.

## II. JURISDICTION AND VENUE

3.

This Court has federal jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this lawsuit is brought under title VII of the Civil Rights Act of 1964. This Court has jurisdiction over the Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, as said state law claims form part of the same case or controversy under Article III of the United States Constitution.

## III. FACTS

4.

**PLAINTIFF** began her employment with Defendant, (hereinafter "Brock") on or around March 21, 2017.

5.

On or about July 31, 2018, Ms. Jones witnessed Michael Teague expose himself to Zachary Tedeton, both coworkers of Ms. Jones. Ms. Jones also heard Mr. Teague say "This is what I have for you," upon information and belief in reference to Mr. Teague exposing himself to Mr. Tedeton. Ms. Jones asked Mr. Teague if she saw and heard what she thought happened, and Mr. Teague confirmed his actions.

6.

These actions not only made Ms. Jones uncomfortable, but more so, made Mr. Tedeton uncomfortable. Mr. Tedeton expressed his concerns regarding how the situation made him uncomfortable to Ms. Jones, who then reported the incident to Gary Pugh, the superintendent at the jobsite.

7.

Mr. Pugh stated that he would ensure the matter would be taken care of. Mr. Pugh then spoke with Mr. Tedeton and Ms. Jones, again informing them that the situation would be taken care of and that nothing else should be said about the incident.

8.

However, upon information and belief, the matter was not resolved and Mr. Teague was not terminated, rather he was moved to another jobsite. Upon information and belief, he was moved to the Kinder Morgan jobsite.

9.

On or about August 12, 2018, Ms. Jones met with Mr. Pugh, Glenn LNU, Ulyssess LNU, and Milton Bendily regarding the July 31, 2018 incident. In the meeting Mr. Bendily suggested that Mr. Teague be terminated because of the information provided during the meeting.

10.

On or about August 13, 2018, Ms. Jones was approached by Mr. Bendily and Mr. Pugh and was given an ultimatum: transfer to another jobsite or get terminated. Mr. Bendily informed Ms. Jones that if she chose to transfer, she could eventually come back to Rubicon in her same position. Ms. Jones was also informed that she was being put on the Kinder Morgan project due to the conflict between her and Mr. Pugh and that she would remain at the Kinder Morgan location until the "situation settled down."

11.

Ms. Jones was then transferred to Kinder Morgan under the impression that she would return to Rubicon within a few weeks based on Mr. Bendily's statement.

12.

On or about August 15, 2018, Ms. Jones began working on the Kinder Morgan project.

13.

After approximately one week of working on the Kinder Morgan project, Ms. Jones was informed that there was no more work for her at that location, so she attempted to return to the Rubicon jobsite. Connie LNU, an inspector at Rubicon, informed Ms. Jones that there were no jobs available for her. Upon information and belief, Connie was relaying the message on behalf of Mr. Pugh, as Mr. Pugh did not want Ms. Jones to return to the Rubicon jobsite.

14.

Because Ms. Jones was told she could not return to Rubicon, she attempted to call Mr. Bendily, as he had previously informed her that she could return to the Rubicon location. However, Mr. Bendily would not answer her phone calls. Ms. Jones also called Brandon LNU to request the move back to Rubicon, but Brandon informed her that there were no jobs available for her.

15.

On August 23, 2018, Ms. Jones reached out to Brandon via text message regarding the ultimatum she was given: to transfer or be terminated. Brandon directed her to Donnie Olivier and gave her a contact number.

16.

Ms. Jones attempted to contact Brock's human resources department on numerous occasions to address the transfer and retaliation.

17.

On September 4, 2018, Ms. Jones emailed Mr. Olivier regarding the July 31st incident, as well as her wrongful transfer/termination. Ms. Jones was ultimately informed that she was placed on "transfer" and not terminated; however, she was never transferred.

18.

Ms. Jones was terminated as she was never transferred to a new job site.

### IV.  CAUSE OF ACTION: RETALIATION

19.

Plaintiff hereby incorporates all foregoing facts by reference for the purposes of this count.

20.

Title VII of the Louisiana Employment Discrimination Law prohibits retaliation for reporting sexual harassment.

21.

Plaintiff reported that Michael Teague exposed himself to Zachary Tedeton, a form of sexual harassment.

22.

Not only did Defendant not accurately handle the report of sexual harassment, Plaintiff was penalized for reporting the harassment. Specifically, Plaintiff was terminated as she was never transferred to a new job site and, therefore, could not work.

23.

Defendant acted with malice and reckless disregard for Plaintiff's federally protected rights.

## V. DAMAGES

24.

As a result of the foregoing, Plaintiff is entitled to an award og damages to include all compensatory, special, punitive and other damages as are reasonable in the premises, including, but not limited to:

a. Back pay;

b. Front pay;

c. Past, present, and future emotional distress;

d. Medical expenses, past, present, and future;

e. Relocation costs;

f. Punitive damages;

g. Attorney fees;

h. Expert witness fees;

i. Judicial interest;

j. Court costs; and

k. All other relief to which she may be entitled by law or equity.

## VI. PRAYER

**WHEREFORE,** Plaintiff, Rosla Jones, prays that after due proceedings had, there be judgment rendered in her favor, and that she be awarded compensatory damages, punitive damages, attorney's fees, costs, legal interest, expert witness fees and any other relief to which she is entitled under law/equity.

## JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully submitted,

Rosla Jones
*Rosla Jones*
P.O. Box 534
Woodville, MS. 39669

## SERVICE TO BE ACCOMPLISHED BY WAIVER:

**BROCK SERVICES, LLC**
*Through its principal agent*
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

7